***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and oral arguments of the parties. With reference to the errors assigned, the Full Commission finds that the parties did not show good grounds to reconsider the evidence or to rehear the parties or their representatives; however, good grounds do exist to receive further evidence on plaintiff's average weekly wage and continuing disability. Accordingly, the Full Commission AFFIRMS with some modifications, the Opinion and Award of the Deputy Commissioner, and reopens the record for presentation of additional evidence.
 *********** *Page 2 EVIDENTIARY MATTERS
Before the Full Commission, plaintiff moved to enter certain evidence into the record. Since the record is now reopened in this matter, the Full Commission HEREBY holds a ruling on plaintiff's motion in ABEYANCE. Plaintiff's motion shall be initially addressed by the Deputy Commissioner who conducts the evidentiary hearing upon the remand of this case.
On January 22, 2009, defendants moved to supplement the evidentiary record with documents filed with the North Carolina Secretary of State. Given that a new evidentiary hearing is to be held in this matter, the Full Commission HEREBY holds a ruling on defendant's motion in ABEYANCE. Whether to admit into evidence the records in question shall be addressed by the Deputy Commissioner who conducts the hearing upon the remand of this case.
 *********** ISSUES
1. Whether plaintiff sustained a compensable injury by accident and if so, to what compensation, if any, is he entitled?
2. Whether defendants should be sanctioned under N.C. Gen. Stat. § 97-88.1?
 ***********
The Full Commission finds as facts and concludes as matter of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction over this claim. *Page 3 
2. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
3. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. The date of the first injury by accident arising out of and in the course and scope of plaintiff's employment with defendant-employer occurred on November 5, 2007.
5. The date of the alleged second injury by accident, and/or alleged aggravation of the November 5, 2007 work injury, arising out of and in the course and scope of plaintiff's employment with defendant-employer occurred on November 27, 2007.
6. Both injuries were to plaintiff's right hand.
7. Defendant-employer is insured by Stonewood Insurance Company.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit (1) — Plaintiff's medical records;
 b. Stipulated Exhibit (2) — Plaintiff's medical bills;
 c. Stipulated Exhibit (3) — Industrial Commission forms;
 d. Stipulated Exhibit (4) — Discovery responses;
 e. Stipulated Exhibit (5) — Additional medical records of Plaintiff.
9. Also submitted by the parties and admitted into evidence were the depositions of Dr. Harrison Tuttle, Dr. Gary L. Smoot, and Physician's Assistant Reza Hatefi.
 ***********
Based upon the competent and credible evidence of record, and any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. At the time of hearing before the Deputy Commissioner, plaintiff was thirty-three (33) years of age. Plaintiff is a native of Cuba, and was educated in Cuba through the tenth grade. Plaintiff received a Certificate for a Lab Technician at the Hialeah Technical Center in Miami, Florida in 1996. Between 1995 and November 5, 2007, plaintiff worked in a number of manual labor medium to heavy-duty jobs.
2. On November 5, 2007, plaintiff was employed by defendant-employer. In his position with defendant-employer, plaintiff's duties required that he have no physical problems, limitations, or conditions that would prevent lifting as much as one hundred (100) pounds, climbing ladders, or operating equipment.
3. On November 5, 2007, plaintiff sustained and admittedly compensable injury by accident while working for defendant-employer when his right hand was punctured by a nail shot from a nail gun. More specifically, the nail punctured the webbing between plaintiff's thumb and index finger. Following this incident, a co-worker came to assist plaintiff and defendant-employer witnessed his hand bleeding on the date in question.
4. On November 6, 2007, plaintiff sought treatment at Wake Urgent Care, where he was evaluated by Reza Hatefi, P.A. P.A. Hatefi prescribed plaintiff an antibiotic and a thumb splint, restricted him to light duty with no use of his right hand for seven days, and advised him to return in seven days.
5. On November 12, 2007, plaintiff returned to P.A. Hatefi and reported experiencing sharp pain in his distal fingers and some numbness and tingling with no weakness or swelling. P.A. Hatefi recommended that plaintiff undergo an EMG, which was approved by defendants. Plaintiff continued to treat with Wake Urgent Care through November 29, 2007. *Page 5 
6. Defendant-Employer was able to accommodate plaintiff's light-duty restrictions by having him clean and organize the work area. In his recorded statement, plaintiff stated that during the period of his light duty work, his right hand was very swollen and he could not move his fingers or close his right hand. Plaintiff worked through November 27, 2007.
7. On November 27, 2007, plaintiff aggravated his right hand when he was loading trash into a dumpster and his right had was struck by a piece of wood. By November 28, 2007, plaintiff's pain increased to the extent that he sought emergency medical treatment at Johnston Memorial Hospital.
8. A physician at Johnston Memorial instructed plaintiff to follow up with a hand specialist. Plaintiff then sought treatment with Dr. Harrison Tuttle at the Raleigh Orthopaedic Clinic on November 30, 2007. On that date, Dr. Tuttle released plaintiff to return to work with no lifting more than one pound and no pushing or pulling more than one pound.
9. Shortly after plaintiff returned to work with Dr. Tuttle's latest work restrictions, defendant-employer terminated him.
10. Thereafter, plaintiff continued to experience problems with his right hand. Dr. Tuttle noted that plaintiff's right hand swells intermittently in an unpredictable fashion and that he experienced intermittent numbness and tingling in his thumb, index and long finger. Plaintiff was prescribed a wrist splint.
11. A Tinel's test on December 20, 2007 revealed that plaintiff had mildly positive carpal compression. By December 26, 2007, Dr. Tuttle further restricted plaintiff to no work with the right arm. These restrictions were continued until the day Dr. Tuttle performed surgery on plaintiff's right hand. *Page 6 
12. On February 18, 2008, Dr. Tuttle performed a right carpal tunnel release surgery and exploration of plaintiff's right median nerve. During the surgery, Dr. Tuttle found scar tissue circumferentially around the distal aspect of the median nerve where it divided into the common digital branch to the index/long finger, as well as the common digital nerve to the long and ring finger as well as where the nerves to the thumb exit at the median nerve. Dr. Tuttle did not find any obvious direct injury to the median nerve.
13. Dr. Tuttle testified that on November 5, 2007 plaintiff sustained a deep wound to the right hand that caused scarring around the common digital nerves. Dr. Tuttle further testified that the overall complex of symptoms anatomically fits the injury precisely and that the operative findings were consistent with the physical findings on his examination as well as the findings of where the scar's entry and exit were on the hand.
14. On the issue of causation, Dr. Tuttle testified to a reasonable degree of medical certainty that plaintiff's November 5, 2007 puncture injury alone, without the aggravation of November 27, 2007, would have necessitated the treatment.
15. Dr. Tuttle medically excused plaintiff from work for the period of February 18, 2008 to May 9, 2008, when he was released to return to work that did not cause pain. Additionally, Dr. Tuttle assigned plaintiff a permanent partial disability rating of seven and one-half (7.5) percent to the right hand. The hearing before the Deputy Commissioner occurred prior to plaintiff's rating and release to return to work; therefore, plaintiff has not had an opportunity to present evidence on his continuing disability after May 9, 2009.
16. As of the date of the hearing before the Deputy Commissioner on February 25, 2008, plaintiff had not returned to work since he last worked for defendant-employer on November 27, 2007. *Page 7 
17. As a direct and proximate result of his November 5, 2007 injury, plaintiff has established that he was unable to work from November 27, 2007 through May 9, 2008 and defendants have shown no evidence that he was capable of obtaining any employment during this period.
18. In an Amended Opinion and Award, Deputy Commissioner Phillips concluded that the record was insufficient to establish plaintiff's average weekly wage by reason of the short time during which plaintiff was in the employ of defendant-employer. Deputy Commissioner Phillips ordered the defendants to provide wage information on the earnings of another person of the same grade and character, employed in the same class of employment and in the same locality as plaintiff. Defendant's Exhibit # 1, purporting to represent total wages for a similarly situated employee as plaintiff was submitted to the Industrial Commission and received into evidence over plaintiff's objection. Based upon the information provided in Defendant's Exhibit 1, Deputy Commissioner Phillips concluded that the average weekly wage for plaintiff was $359.94, yielding a compensation rate of $239.96. As stated above, the record is being reopened for receipt of additional evidence on average weekly wage. During the interim period while this case is pending for the gathering of additional evidence, the Full Commission finds and concludes that plaintiff's compensation rate shall be based upon the average weekly wage of a similarly situated employee as found by Deputy Commissioner Phillips until further evidence on this issue can be presented at a future hearing.
19. Defendants' denial of the claim was not unreasonable.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following: *Page 8 
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer to his right hand on November 5, 2007. N.C. Gen. Stat. § 97-2(6).
2. Given that no Industrial Commission Form 22 has been filed, the Full Commission determines that plaintiff's compensation rate shall be based upon the average weekly wage of a similarly situated employee as found by Deputy Commissioner Phillips, until further evidence on this issue can be presented at a future hearing. N.C. Gen. Stat. § 97-2(5).
3. As a direct and proximate result of his November 5, 2007 injury, plaintiff has established that he was unable to work from November 27, 2007 through May 9, 2008 and defendants have shown no evidence that he was capable of obtaining any employment during this period, thereby entitling him to be paid temporary total disability compensation benefits at the applicable compensation rate for said period. N.C. Gen. Stat. § 97-29; Russell v. Lowe's Product Distribution,108 N.C. App. 762,425 S.E.2d 454 (1993). Plaintiff has not had sufficient opportunity on this record to present evidence of his continuing disability after May 9, 2008.
4. Plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred by plaintiff in the future, for the treatment of his right hand necessitated by his compensable injury of November 5, 2007, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when bills for the same have been processed pursuant to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25;97-25.1.
5. Because defendants' denial of the claim was not unreasonable, plaintiff is not entitled to attorney's fees or sanctions under N.C. Gen. Stat. § 97-88.1.
 *********** *Page 9 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the temporary compensation rate of $239.96 from November 27, 2007 through May 9, 2008. Plaintiff's average weekly wage may be adjusted upon receipt of further evidence; however, defendants shall in the interim pay as ordered. Any overpayment credit that may be due defendants, or underpayment to plaintiff, shall be ruled upon in the final Opinion and Award.
2. Defendants shall pay all medical expenses incurred in the past or incurred in the future by plaintiff as a result of the November 5, 2007 compensable injury, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when bills for the same have been processed pursuant to established Industrial Commission procedures.
3. Defendants shall pay the costs associated with this action.
4. IT IS FURTHER ORDERED that this matter is reopened for receipt of additional evidence on average weekly wage, plaintiff's disability after May 9, 2008 and any rulings that were held in abeyance herein. This case is hereby remanded to Chief Deputy Commissioner Wanda Blanche Taylor for assignment for further hearing on the issues set forth herein. The Deputy Commissioner shall gather the evidence and submit the same to the Full Commission for entry of a final Opinion and Award.
This the __ day of May, 2009.
S/__________ BERNADINE S. BALLANCE COMMISSIONER *Page 10 
CONCURRING:
 S/__________ PAMELA T. YOUNG CHAIR
 S/__________ DIANNE C. SELLERS COMMISSIONER
 *Page 1